**In re The J. PETERMAN COMPANY, Debtor.**

**Bankruptcy No. 99–50142.**

United States Bankruptcy Court, E.D. Kentucky, Lexington Division.

April 23, 1999.

Gregory D. Pavey, Lexington, KY, for the debtor.

W. Thomas Bunch, Lexington, KY, for Nationscredit Distribution Finance, Inc.

James S. Carr, New York City, for Children's Place Retail Stores, Inc.

Guy M Graves, Lexington, for Chelsea CGA Realty Partnership, L.P.

W. Timothy Miller, Cincinnati, OH, for the Unsecured Creditors Committee.

Ronald Gold, Cincinnati, OH, for Heller Financial.

Wendy Ponader, Indianapolis, IN, for Paul Harris Stores.

### *MEMORANDUM OPINION*

WILLIAM S. HOWARD, Bankruptcy Judge.

The debtor in this chapter 11 case seeks authority to assume and assign a lease of commercial real property to The Children's Place Retail Stores, Inc. ("TCP"), and objection has been filed by Chelsea CGA Realty Partnership, L.P. ("Chelsea"), the lessor of the premises. As set forth below, the debtor seeks an order of this Court modifying the terms of its lease with Chelsea as to a radius restriction for other stores of a similar nature by the same

tenant. For the reasons set forth below, the Court will deny the motion of the debtor to assume, assign and modify the lease in question and extend to the debtor an additional fourteen (14) day period within which to file any further application to assume and assign the within real property lease failing which, the lease will be deemed rejected by the debtor.

The debtor in this liquidating Chapter 11 case was an upscale seller of clothing and household items which originally began as a mail order operation in 1987. The debtor gradually opened several retail stores, some of which sold debtor's merchandise at substantially full price and others of which were discount stores. Management decided, in 1997, to embark on a large scale operation to open many more stores of both kinds, full retail and discount. The demands for capital created by the opening of the new stores as well as a down turn in the catalog business eventually proved fatal for the debtor's business and a Chapter 11 case was filed on January 25, 1999 which, from the outset, has been a liquidation case.

By virtue of a lease dated December 16, 1997, the debtor leased space in a shopping center by the name of Woodbury Common in Central Valley, New York. The lease was amended by a First Amendment to Lease dated April 2, 1998 and the term of the lease continues through January 31, 2009. Woodbury Common is an upscale discount shopping center of approximately 200 stores located less than 60 miles from New York City. The lease restricts the use of the store space to selling certain types of merchandise at section 1.01M of the lease which reads as follows:

USE CLAUSE: The retail sale, at 'off price', of only (a) sportswear and adventure apparel and related merchandise and accessories made by, or exclusively for, The J. Peterman Company and bearing the 'J. Peterman' brand name, together with (b) such other items (not bearing the 'J Peterman' brand name) as Tenant may sell in its catalog or its other 'off-price' stores provided that that portion of the floor space of the sales area of the Demised Premises devoted to the display of such other items shall not, in the aggregate, exceed 10% of the aggregate floor space of the sales area of the Demised Premises. Tenant shall not sell any items that are manufactured by or for, and/or bearing the labels of, any other tenant or occupant of the Shopping Center.

The lease provided for percentage rent based upon the gross sales of the debtor. The lease also contained a radius restriction in section 15.18 which reads as follows:

RADIUS: Tenant covenants and agrees that . . . Tenant . . . shall directly or indirectly . . . own, operate or become financially interested in either a factory or manufacturers outlet store or an off-price or discount retail store with a similar or competing business and which shall be doing business under a trade name which shall include the words 'J. Peterman' within a radius of 60 air miles from the extreme limits of the Shopping Center. Should Tenant violate this provision, then in addition to any and all rights and remedies which Landlord may have, at law or in equity, Landlord may require Tenant to include the gross sales from any such factory or manufacturers outlet store or off-price or discount retail store located within such restricted radius in the Gross Sales reportable by Tenant to Landlord under the terms of this Lease for the purpose of computing Percentage Rent due hereunder. . . . This Article shall not apply to any such store or stores which are open and are being operated by Tenant within the restricted area as of the date of the execution of this Lease or to a full price The J. Peterman Company store.

Pursuant to authorization by the Court, the debtor conducted an auction of its assets and the major assets of the debtor were sold to Paul Harris Stores ("Harris"). As part of the sale, Harris had the option

to cause the debtor to request an assignment of the lease from Chelsea for the Woodbury Common site. Harris elected not to proceed with the assignment of the Woodbury Common site and, at that point, the debtor reached agreement with TCP to apply to the Court to assume and assign the lease to TCP for some approximately $20,000 consideration to the debtor (although this amount is decreasing as rental accrues).

The debtor seeks to assign the lease to Chelsea pursuant to the provisions of 11 U.S.C. § 365(b)(1) and (3) and (f)(1), set out as follows:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee-

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

\* \* \* \* \* \*

(3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance-

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

\* \* \* \* \* \*

(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection; except that the trustee may not assign an unexpired lease of nonresidential real property under which the debtor is an affected air carrier that is the lessee of an aircraft terminal or aircraft gate if there has occurred a termination event.

The proposed assignee of the lease, TCP, already operates one discount store within the 60 mile radius prohibited by the debtor's lease and has executed leases for sites for two more such discount stores within the radius. Chelsea raised several objections to the assumption and assignment of the lease. Initially, Chelsea contended that the use clause in the lease, set out above, did not allow the use of the premises by any other tenant except Peterman. However, Chelsea has not pursued this objection in light of the provisions of 11 U.S.C. § 365(f)(1) set out

above. Chelsea also initially objected and raised the question of tenant mix. The evidence established that there were at least five other children's stores in the very large center known as Woodbury Common and that the change from Peterman's adventure, travel clothing line to a children's wear shop would not significantly change the mix in such a large complex. This objection has not been pursued by Chelsea after an initial flurry. The remaining objection Chelsea has raised is that the proposed tenant of the premises now has one, and soon will have three, discount stores within the 60 mile radius set out in the lease. The debtor had one other store within that radius but, since it was not a discount store, it did not violate the terms of the radius. Chelsea has indicated that the existing store which TCP operates in New Jersey would be acceptable but that the two new stores to be opened by TCP would be objectionable since they are closer to the New York City area and hence would tend to drain even more business from the Woodbury Common store. Chelsea has argued that all three stores violate the radius restriction but that it would be willing to waive the restriction only for the one operating store.

The testimony and other evidence presented to the Court established that TCP and Chelsea have negotiated for a lease at Woodbury Common, but have been unable to reach a satisfactory arrangement. TCP appears to want the location of the debtor's store, while Chelsea wants to locate TCP in another store in the shopping center. The debtor has established that the financial wherewithal of TCP is substantially better than that of the debtor and no substantial questions have been raised concerning the debtor's ability to cure defaults under the lease with TCP's money upon assumption and assignment of the lease.

TCP argues that the fact that Chelsea is willing to negotiate with them and have them as a tenant, but not in this location, points out the value of the particular lease

which the debtor has and argues that Chelsea is only trying to take advantage of the debtor's position to further its own financial position. Of course, that is the very essence of a bankruptcy proceeding that everyone is protecting their own financial position as best they can.

TCP contends that the radius restriction is unreasonable and that it amounts to a non-assignability clause in violation of 11 U.S.C. § 365(f)(1). Chelsea responds that the radius restriction is reasonable in light of the nature of its upscale discount shopping center business and that, when taken in conjunction with the percentage rent, is a "bargained for benefit" which may not be altered by the Court pursuant to 11 U.S.C. § 365(b)(3)(C) which explicitly recognizes radius provisions in shopping center leases.

TCP has made the argument that the 60 mile radius clause set out in the lease is unreasonable and offered testimony that shorter radii were the norm in the industry. However, no relevant statutory or case law has been offered to support the contention that the 60 mile radius is unreasonable. TCP has further offered to abide by the radius clause *in futuro*. By this offer, TCP explains that they would open no more stores within the 60 mile radius but would operate only the three which are either open or under construction.

"When the debtor assumes the lease or the contract under § 365, it must assume both the benefits and the burdens of the contract." *City of Covington v. Covington Landing Limited Partnership,* 71 F.3d 1221 (6th Cir.1995) at page 1226. The landlord is entitled, upon lease assignment and assumption to receive its "bargained for exchange". *In re Joshua Slocum Ltd.,* 922 F.2d 1081 (3rd Cir.1990). Further, the Bankruptcy Court for the Southern District of New York in *In re Ames Dept. Stores, Inc.,* 127 B.R. 744 (Bkrtcy.S.D.N.Y.1991) has held, at pages 752–3, as follows:

Significantly, the legislative history makes plain that Congress' purpose in its 1984 tightening up of section 365(b)(3) was to ensure that "the lessor and other tenants [maintain] the benefit of the *original bargain* with the debtor." S.Rep. No. 65, 98th Cong., 1st Sess. 67, 68 (1983) (emphasis added). It sought to eliminate any leeway in changing that bargain....

 Clearly, the radius is "bargained for exchange" and unless it contravenes the Bankruptcy Code's assignment provisions, must remain a provision of the lease upon any assignment. TCP contends that it clearly does contravene the assignment provisions of Section 365 since it greatly limits the field of potential assignees and hence the debtor's ability to garner assets for distribution for its creditors. This argument seems to contravene the provisions of 11 U.S.C. § 365(b)(3)(C). Further, Chelsea contends that while the radius restriction is reasonable on its face, that, when combined with the percentage rent provisions, it is clearly reasonable. Chelsea further points out that the lease does not provide for automatic termination for a violation of the radius restriction but gives the landlord the option of including the sales from other stores within the radius restriction in the percentage rent calculation.

Other case law has cast significant doubt upon the Court's authority to alter the terms of a lease in order that it may be assigned absent clear anti-assignment implications of the offending clause. *In re TSW Stores of Nanuet, Inc.,* 34 B.R. 299 (Bkrtcy.S.D.N.Y.1983); *In re Pin Oaks Apartments,* 7 B.R. 364 (Bkrtcy.S.D.Tex. 1980). While the 60 mile radius included in the lease appears to be a larger radius restriction than the cases cited by TCP upholding shorter radius restrictions, the Court is persuaded that the radius restriction is reasonable in the circumstances of this upscale discount center strategically located within short driving distance of New York City. The Court further believes

that it is without authority to allow the assignment of the lease with only *in futuro* application of the radius restriction because this changes the bargain struck by the parties initially at the inception of the lease.

For the foregoing reasons, the Court will, by separate order, deny the assumption and assignment requested by the debtor, without prejudice to the debtor to further apply for assumption and assignment of this lease within an additional period to be specified in the order.