### In re HEILIG–MEYERS COMPANY, et al., Debtors.

### No. 00–34533–DOT.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Sept. 28, 2001.

---

Paul V. Shalhoub, Andrew Gottesman, Wilkie, Farr & Gallagher, New York City, for debtors.

David D. Hopper, McCandlish, Kaine, P.C., for Mitchell Center, LLC.

Tyler B. Brown, Robert S. Westermann, Hunton & Williams, Richmond, VA, for Hancock Fabrics, Inc.

## AMENDED MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

Hearing was held on debtors' motion to approve several sales of store leases to successful bidders and the objection to the motion filed by landlord Mitchell Center, LLC (Mitchell).

For reasons stated below, Mitchell's objection to the proposed sale, assumption and assignment of debtors' lease for store number 101 in the Mitchell Center shopping complex in Aiken, South Carolina to Hancock Fabrics, Inc. (Hancock), will be sustained and debtors' motion denied as to that lease.

### PROCEDURAL HISTORY.

Debtors filed a motion on May 1, 2001, for orders relating to assumption and sale of various leases of stores formerly operated by debtors. Debtors' lease with Mitchell for its store number 101 located in Aiken, South Carolina, was one of several non-residential real property leases debtors proposed by their motion to assume and assign to qualified bidders, such as Hancock. Mitchell filed an objection to the motion based upon its assertion that under debtors' lease for store 101 the lessor has the right to refuse the sublet or sublease to the proposed assignee Hancock.

### FINDINGS OF FACT.

On July 5, 1991, debtors entered into a nonresidential real property lease with Mitchell as lessor for the premises located in the Mitchell Center shopping complex in Aiken County, South Carolina. Debtors' lease contains no use restrictions and permits debtors to use the premises for any lawful purpose. See Heilig Lease at 2–3, ¶ 4(g). Paragraph 5(b) of the lease contains a provision that debtors as tenants shall have the right to "Assign or sublet the Premises or any portion thereof with Landlord's written consent which shall not be unreasonably withheld. Tenant agrees not to assign or sublet the premises to any business that would violate any non[-]com-

pete agreements in which Landlord has with other Tenants in the Shopping Center."

Debtors filed this chapter 11 case on August 6, 2000, and continues to operate as debtor in possession.

On March 5, 2001, Mitchell entered into a lease of premises in Mitchell Center with Attitudes With Fabric as lessee. This lease states that Fabric intends to use the premises for retail upholstery fabric sales and related services. *See* Fabric Lease at 1, ¶ 3. The lease also provides that "[t]he [lessor] agrees to give [Fabric] exclusive rights in the center for a fabric shop, and [lessor] agrees not to lease to any other tenant who would be in direct competition with [Fabric]." Fabric Lease at 10, ¶ 40(4).

Hancock is a fabric retailer that purchased a package of nine leases from debtors in an auction. The package included store number 101 in Aiken. Hancock's intended use for the premises is to operate a store selling fabrics, materials, piece goods and related products. Hancock was unaware of any lease between Mitchell and Fabric at the time of the auction and is willing to accept an assignment of debtors' lease, notwithstanding the operations of Fabric in the same complex.

### DISCUSSION AND CONCLUSIONS OF LAW.

■■■ Debtor's proposed assignment of the Mitchell shopping center lease to Hancock is governed by 11 U.S.C. § 365(b)(3) and must therefore satisfy the rigorous requirements for "adequate assurance of future performance of a lease of real property in a shopping center ...." 11 U.S.C. § 365(b)(3).

Four subsections of § 365(b)(3) comprise the heightened requirements for adequate assurance in the shopping center context.

Assignment is impermissible if any one of the four elements is unmet. The court finds it necessary to discuss only the requirements of subsection (C):

> [A]ssumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center ....

11 U.S.C. § 365(b)(3)(C). Here, this provision requires the court to examine two leasehold interests. The lease between debtors and Mitchell is implicated by the first clause of the statute, and the lease between Mitchell and Fabric is raised by the contents of the second clause.

With respect to the lease between debtors and Mitchell, the first clause of § 365(b)(3)(C) states, "[the] ... assignment ... is subject to all the provisions [of the lease], including (but not limited to) ... radius, location, use, or exclusivity provision." This language requires interpretation of tenant rights under ¶ 5 of debtors' lease with Mitchell. Namely, ¶ 5(b) entitles debtors to the right to assign or sublet if the landlord's written consent is first obtained. Mitchell has not consented.

Next, ¶ 5(b) of the Heilig lease provides that debtors will not "... assign or sublet the premises to any business that would violate any non[-]compete agreements in which [l]andlord has with other [t]enants in the Shopping Center." Because of this lease provision, Mitchell's lease with Fabric must be considered, as the Fabric lease contains an "exclusive rights" or non-compete provision on the tenth page in ¶ 40(4).

It is unquestioned that both Fabric and Hancock are in the business of selling fabrics, piece goods, notions, material, upholstery, accessories and related services

and that both tenants' premises are located in the Mitchell Center. Therefore, because of the location of both premises and the overlap of area of business for both entities, the proposed lease assignment to Hancock must comply with the preexisting exclusive competition clause of the Fabric lease, just as is specified in debtors' lease.

The court finds that the proposed sale, assumption and assignment to Hancock of debtors' lease with Mitchell cannot meet the provisions of the leases themselves or satisfy the requirements of § 365(b)(3)(C) because the Hancock lease conflicts with the exclusivity clause of the Fabric lease. *See In re Sun TV & Appliances, Inc.,* 234 B.R. 356 (Bankr.D.Del.1999); *In re J. Peterman Co.,* 232 B.R. 366 (Bankr.E.D.Ky. 1999); *Rockland Ctr. Assocs. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.),* 34 B.R. 299 (Bankr. S.D.N.Y.1983); *see also* David Kupetz, 2001–2002 *Annual Survey of Bankruptcy Law,* pp. 352–53 (William L. Norton, Jr., ed., West Group 2001).

For example, in *In re Sun TV,* the court denied debtor's assignment motion and held that debtor could assume and assign its shopping center lease only by first satisfying special statutory restrictions and that a restrictive covenant in debtor's lease could not be stricken as a de facto anti-assignment clause, even if the restriction prohibited successful assignment of the lease. *See* 234 B.R. at 370–71. Similarly, in *In re J. Peterman,* the bankruptcy court denied debtor's request and upheld a radius restriction. *See* 232 B.R. at 370. The Third Circuit in *In re Slocum* held likewise that an average sales clause in debtor's lease could not be excised by the bankruptcy court and denied the chapter 11 trustee's motion to assume and assign debtor's retail space in a shopping center. *See* 922 F.2d 1081, 1092 (3d Cir.1990). Finally, the bankruptcy court in *In re TSW Stores* did not allow the debtor to modify its shopping center lease to change the category of items that could be sold under a use provision because the proposed transaction would disrupt the center's tenant mix. *See* 34 B.R. at 308.

Because debtors' proposed assignment of the lease in Mitchell Center to Hancock is barred by § 365(b)(3)(C), debtors' motion to assume, sell and assign the lease will be denied.