**In re RICKEL HOME CENTERS, INC., Debtor.**

**No. 92–96–JJF.**

United States District Court, D. Delaware.

March 6, 1999.

Laura Davis Jones and Brendan Linehan Shannon, of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, Robert E. Gerber and Matthew Barr, of Fried, Frank, Harris Shriver & Jacobson, New York City, for debtor and debtor-in-possession.

Norman Pernick, of Saul, Ewing, Remick & Saul, Wilmington, Delaware, Patrick P. DiNardo and Deborah A. O'Malley, of Sullivan & Worchester, LLP, Boston Massachusetts, for Staples, Inc.

Douglas P. Bartner and Frederic Sosnick, of Shearman & Sterling, New York City, for Vornado, Inc.

Stephen M. Miller, of Smith, Katzenstein & Furlow, LLP, Wilmington, Delaware, Richard J. Mason, P.C., and Brian L. Shaw, of Ross & Hardies, Chicago, Illinois, for Net Realty Holding Trust.

William L. Witham, Jr. and Patricia Pyles McGonigle, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Delaware, Barry W. Frost and Donna Markey DeGrezia, of Teich, Groh and Frost, Trenton, New Jersey, for L.R.S.C. Co.

1. For the record, the Court notes that Vornado's Objection does not appear on the docket sheet for this case, and therefore, the Court cannot cite to the appropriate Docket Item Number.

## OPINION

FARNAN, Chief Judge.

Presently before the Court are three objections to the Motion For An Order Pursuant To Sections 363, 365(a) and 365(f) Of The Bankruptcy Code And Bankruptcy Rules 6004 And 6006 Authorizing The Debtor–In–Possession To Assume (Where Applicable) And Sell And Assign Nonresidential Real Property Leases filed by Rickel Home Centers, Inc. (the "Debtor") (D.I.1275). Objections have been raised by Vornado, Inc. ("Vornado")[1], Net Realty Holding Trust ("Net") (D.I.1299) and L.R.S.C., Co. ("LRSC") (D.I.1300). For the reasons set forth below, the Court will overrule the Objections.

## FACTUAL BACKGROUND

### I. The Debtor's Motion

In its Motion, the Debtor seeks an order authorizing it to sell 41 of its leases to Staples, Inc. ("Staples"), or its nominee, and to assume (where applicable) and assign the selected leases that Staples desires to have assigned to it, pursuant to an agreement between the Debtor and Staples. Under the terms of this agreement, Staples has agreed to pay the Debtor $35.5 million in exchange for the leases. To secure its performance under the Agreement, Staples has posted a $3 million deposit, which is currently being held in escrow.

In addition, the Agreement provides that Staples may assign its rights under the Agreement to any nominee. The Debtor and Staples have represented that they expect such nominee to be a Staples affiliate. In the event of an assignment by Staples to its nominee, Staples has agreed to unconditionally guarantee all of its obligations under the Agreement.

## II.  The Objections

Although numerous objections were initially raised to the Motion, Staples and the Debtor have negotiated settlement agreements with all but three of the objecting parties.  The remaining objections have been filed by Vornado, Net and LRSC.

### A.  *Vornado*

Vornado is the owner of a shopping center known as the Bradlees Shopping Center, on Hackensack Avenue, Hackensack, NJ (the "Hackensack Shopping Center").  Pursuant to the terms of a lease (the "Hackensack Lease") dated November 1, 1982, between Vornado and Grace Retail Corporation, Vornado agreed to lease a 41,000 square foot store (the "Hackensack Store") in the Hackensack Shopping Center to Grace, the predecessor of Channel Home Centers, Inc., for the purposes of Operating a Channel Home Center.  In 1994, Channel was acquired by Rickel Home Center, Inc., who continued to operate the Hackensack Store as a home improvement store until it completed its "going out of business" sales.  Staples has represented that it intends to open a 24,000 square foot Staples Store in the former Rickel's store and sublet the remaining 17,000 square foot store to another entity.

Vornado objects to the Debtor's Motion on both constitutional and statutory grounds.  With respect to the constitutional aspect of its objection, Vornado contends that the Debtor's Motion deprives Vornado of its due process rights because, to the extent that the Debtor is seeking to modify the Hackensack Lease in its Motion, the Motion fails to specify the provisions the Debtor seeks to modify.[2]  With respect to the statutory grounds raised, Vornado raises three specific objections premised on Section 365(b)(3) of the Bankruptcy Code:  (1) that the Debtor and Sta-

ples should not be permitted to disregard the use restrictions in the lease;  (2) that Staples' need to paint and subdivide the Hackensack Store will violate provisions in the lease concerning alterations to the property;  (3) that Staples' proposed use of the Hackensack Store will disrupt the tenant mix in the Hackensack Shopping Center;  and (4) that any modifications to the lease, including the excise of the provisions and restrictions discussed above and certain provisions pertaining to future assignments of the lease, should not be permanent.

At the hearing, Vornado took the position that the Court could appropriately waive all of the provisions and restrictions in the lease, with the exception of the alterations provision, on a "one-time" basis for the purposes of allowing the Debtor to assign the lease to Staples for the operation of an office supply store.  However, because Staples will only be operating a Staples Store in 24,000 square feet of the space and intends to sublet the remaining portion of the store, Vornado directs its objections to that portion of the Hackensack Store which Staples intends to sublet.

### B.  *Net*

Net is the landlord under a lease (the "Bethlehem Lease") pertaining to the Debtor's store located in the Lehigh Shopping Center in Bethlehem, Pennsylvania (the "Lehigh Shopping Center").  Presently, the Lehigh Shopping Center has two vacant stores, a 48,000 square foot store formerly occupied by Rickel (the "Bethlehem Store") and a 60,000 square foot store formerly occupied by a department store.  Staples has represented that it intends to operate a 24,000 square foot Staples Store in the store formerly occupied by Rickel and sublet the remaining 24,000 square foot store to another entity.

---

**2.**  Based on the record of the hearing, it is the Court's understanding that the Debtor and Staples remedied any deficiency in their Motion by pointing out those provisions in the lease that they seek to modify.  Because the Court understands that the parties have resolved this issue, the Court will not address it.

Although Net raises several objections to the Debtor's Motion, for purposes of discussion, these objections can be categorized into four grounds: (1) Staples should not be permitted to occupy only a portion of the space and sublet the remaining space; (2) the tenant mix of the shopping center will be affected by the assignment to Staples, because the store will "go dark" for a period of time; (3) the percentage rent at the shopping center will be affected; and (4) the Debtor and Staples have not provided sufficient evidence of what Staples intends to do with the Bethlehem Store (i.e. when Staples will commence operations, how much space Staples will occupy, leave dark or attempt to sub-let).[3]

### C. *LRSC*

LRSC entered into a lease agreement (the "Lawrence Lease") with the Debtor, as successor in interest after a series of assignments from Channel dated March 22, 1976, pertaining to Store No. 15 (the "Lawrence Store") at the Lawrence Shopping Center, Lawrence Township, Mercer County, New Jersey (the "Lawrence Shopping Center"). Since 1976, the Lawrence Store has been a home improvement store. The original term of the lease was for fifteen years, with three five-year options. Two of these three five-year options were previously exercised by Channel on January 29, 1991 and then by the Debtor on January 29, 1996.

With respect to the Lawrence Lease, a dispute arose concerning the Debtor's exercise of an option to renew the lease prior to the Debtor's assumption or rejection of the lease. On December 10, 1996, LRSC filed a motion for an order pursuant to § 365 of the Bankruptcy Code requiring the Debtor to assume or reject the lease within a shortened period of time and for an order declaring the Debtor's exercise of

the option void. Prior to a hearing on LRSC's motion, the Debtor and LRSC settled the matter.

The Lawrence Store is approximately 38,000 square feet. As with the previous stores discussed, Staples has represented to the Court that it intends to operate a Staples Store in 24,000 square feet and sublet the balance. LRSC has represented to the Court that its intent, if successful in its objection, is to divide up the 38,000 square foot store into a series of smaller stores that will cater to home improvement needs, such as carpeting, kitchen cabinetry, wallpaper and window treatments.

LRSC objects to the Debtor's Motion on the grounds that: (1) the Debtor and Staples should not be permitted to disregard the use provision in the lease; (2) the Debtor and Staples should not be permitted to disregard provisions requiring landlord consent for assignment, requiring payment to landlord as a price of assignment and affecting forfeiture or modification of any tenants' rights or obligations under the lease; (3) the tenant mix at the Lawrence Shopping Center will be affected and (4) Staples and the Debtor have not provided sufficient evidence concerning the financial condition of Staples.

## DISCUSSION

### I. Use Restrictions

█ Both Vornado and LRSC object to the Debtor's Motion on the grounds that the proposed operation of a Staples Store in their respective shopping centers will violate use restriction provisions in their respective leases. Section 9.01 of the Hackensack Lease provides that the Hackensack Store shall only be used "for the purposes of a typical Channel Home Improvement Center and for no other pur-

---

**3.** At the hearing, Staples proffered that it intends to utilize 24,000 square feet of the Bethlehem Store as a Staples Store and sublet the balance of the Bethlehem Store to another entity. Net objected to the proffer as insufficient and moved to dismiss the Debtor's Mo-

tion. The Court denied the motion to dismiss, finding the proffer sufficient. Accordingly, the Court will overrule Net's objection that the Debtor and Staples did not provide sufficient evidence of Staples' intent regarding the Bethlehem Store.

pose." Additionally Section 1.08(b) of the Hackensack Lease makes clear that the tenant's operation is to be a "Home Improvement Center." Similarly, Article 10 of the Lawrence Lease provides that the "[t]enant may use the Premises as a Channel Home Center similar in operation to a majority of the Channel Home Centers then in operation in New Jersey, and except as provided herein, for no other purpose." Both Vornado and LRSC contend that these restrictions are important to preserving the tenant mix in their shopping centers.

While Vornado agrees that the use restriction may be overlooked for the purposes of the Debtor's assignment to Staples, Vornado contends that it would be inappropriate to excise this provision from the lease, such that it would be inapplicable to any future assigns or sublets of the remaining 17,00 square feet of the subject space that will not be used as a Staples Store. However, LRSC does not limit its objection solely to the space to be sublet. Rather, LRSC contends that the operation of a Staples Store in any portion of the premises should not be permitted. In addition to the grounds raised above, LRSC points out that this provision was important to the settlement arranged between the Debtor and LRSC concerning LRSC's previous motion, and that LRSC intends to maintain this use provision, if it is successful in its motion, by dividing the Lawrence Store and leasing it to entities involved in the home improvement business.

At the hearing, the Debtor proffered the testimony of Mr. Joseph Newsome, president and chief executive officer of the Debtor. If called, Mr. Newsome would testify that the typical Channel Home Improvement Center, which is referred to in the Hackensack and Lawrence Leases, has either become obsolete or is struggling to remain in existence, as a result of the advent of warehouse type home improvement stores like Home Depot. Mr. Newsome would further testify that none of the Debtors' stores would be suitable for a warehouse style store, and that no warehouse style home center stores indicated an interest in any of the Debtor's leases. Further, Mr. Newsome would testify that although some Sears Hardware Stores have recently opened in New Jersey, these stores are not a home center, because they do not sell product lines that constitute 57% of the typical home improvement center business.

Factually, neither Vornado nor LRSC have offered any evidence to rebut the Debtor's proffer in this regard. Indeed, LRSC's plans for the Lawrence Store support the Debtor's proffer in that LRSC must subdivide and rent to a variety of entities to continue the home improvement use, because of the difficulty of finding a single viable entity engaged in the home improvement business.

Legally, in support of their positions concerning the use restrictions, Vornado and LRSC rely upon the language of Section 365(b)(3)(C), which provides that the assumption or assignment of leases is subject to all the provisions of the relevant leases. However, Section 356(b)(3) is not meant to be read in isolation. Rather, Section 365(b)(3) must be read in conjunction with the section that it cross-references, Section 365(f). In pertinent part, Section 365(f)(1) provides:

> [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions, the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection ...

11 U.S.C. § 365(f)(1).

■ In interpreting Section 356(f), courts and commentators alike have construed the terms to not only render unenforceable lease provisions which prohibit assignment outright, but also lease provisions that are so restrictive that they constitute de facto anti-assignment provisions. *See e.g. In re Joshua Slocum Ltd.,*

922 F.2d 1081, 1090 (3d Cir.1990) (recognizing that "[e]ven under the tightly drawn definition of 'adequate assurance' in the shopping center context, Congress did not envision literal compliance with all lease provisions"); *In re Paul Harris,* 148 B.R. 307 (S.D.Ind.1992); S.Rep. No. 98–65, 98th Cong. 1st Sess. 41 (1983); Collen, *Buying and Selling Real Estate in Bankruptcy,* (1997) ¶ 7.06[3]. Based upon the Debtor's proffered testimony of Mr. Newsome, which the Court finds both credible and unrebutted, the Court concludes that the provisions of the Hackensack Lease and Lawrence Lease restricting the use of the respective stores to Channel Home Centers, or to home improvement centers, are de facto anti-assignment clauses. Given that the market for such centers is either non-existent or in dire straits, such use restrictions would make it impossible for the Debtor to assign the Lawrence Lease to any entity and impossible for the Debtor and/or for Staples to assign or sublet the 17,000 square feet not used for a Staples Store under the Hackensack Lease to any entity. Accordingly, the Court concludes that it is appropriate to permanently strike these restrictive use provisions from the Hackensack and Lawrence Leases.

## II. Alterations Provisions

■ Both Vornado and Net raise concerns regarding alterations provisions in the Lease. While both parties oppose Staples' proposed subdivision of their respective stores, Vornado raises additional alterations concerns regarding Staples' need to paint the premises. In addition, Vornado has taken a different legal approach to the questions involved, and therefore, the Court will address Vornado and Net's alterations concerns separately.

### A. ·Vornado

Vornado contends that Staples' need to paint and subdivide the Hackensack Store will violate the lease provisions concerning alterations. Vornado raises these objection both to the use of the Hackensack Store as a Staples Store and to that portion of the Hackensack Store which is to be divided and sublet by Staples.

To the extent that Vornado contends that the Court cannot overlook this provision so as to allow a Staples Store to operate on the premises, the Court will deny the objection. At the hearing Vornado conceded that the Court could overlook use restrictions, as well as six-month to 12–month consent provisions for subletting, in order to allow a Staples Store to operate. Vornado further conceded that such use restrictions and consent provisions are more substantive than painting and space division restrictions. However, Vornado maintained that painting and division restrictions cannot be overlooked in order to allow a Staples to operate. It is the Court's view that such alterations provisions are essentially "nuisance" provisions, in the context of the present discussion which may be more easily overlooked by a court to allow a Debtor to assign property, than use or consent provisions, which Vornado concedes may be overlooked by the Court. Further, the Court finds credible and accepts the unrebutted proffer by Staples that Vornado is presently the landlord to eight Staples Stores in various locations. Based on this proffer, the Court finds Vornado's concerns about the alterations to the property to be disingenuous.

To the extent that Vornado contends that physically subdividing the Hackensack Store would destroy an anchor space in the Hackensack Shopping Center, the Court will likewise overrule Vornado's objection. Again, the Court finds credible and accepts the unrebutted proffer by Staples that its stores are often considered anchors in shopping centers, and that such stores generate a significant amount of weekday, as well as weekend traffic to draw in customers, which both parties agree is the principle function of so-called anchor stores in shopping centers. Based on this

testimony, the Court finds that although Staples intends to occupy 24,000 square feet of the assigned 41,000 square feet, Staples would still be an anchor for the shopping center and attract a sizeable customer base. Therefore, insofar as the instant alterations clauses could preclude the Debtor's assignment to Staples under the circumstances of this case, the Court finds the alterations clauses to be de facto anti-assignment clauses. Accordingly, the Court will overrule Vornado's objection to the modification of alterations provisions, as they pertain to the operation of a Staples Store on the premises.

As to Vornado's objection that the alterations clauses should not be permanently excised from the lease, so as to be non-binding on the entity that sublets the remaining space not utilized by Staples, the Court will sustain Vornado's objection. It is the Court's view that the retention of these provisions will provide the Hackensack Shopping Center owner with a reasonable measure of control over the entity to which Staples will sublet the property. In addition, the Court further finds that these provisions will not have an adverse affect on the subletting of the lease, rendering these provisions de facto anti-assignment provisions.[4]

B. *Net*

Net objects to Staples proposal to physically subdivide the Bethlehem Store. In support of its objection, Net presented the testimony of Kevin O'Shea, Senior Director of Leasing of Net Realty. Mr. O'Shea testified that in his view, a larger store would be more likely to generate more customer traffic and that the Staples Store use would be too narrow to generate enough traffic in the Bethlehem Shopping Center. Mr. O'Shea further testified that he did not believe that a Staples Store would assist his efforts in leasing the va-

cant 60,000 square foot store in the Bethlehem Shopping Center.

In response, Staples again proffered the testimony that Staples Stores are often considered anchors in shopping centers, and that such stores generate a significant amount of weekday, as well as weekend traffic to draw in customers, which, both parties again agree is the principle function of so-called anchor stores in shopping centers. In addition, Staples proffered that Net maintains a lease with a Staples Store occupying only 17,000 square feet in a New York shopping center and that although the New York store is smaller than the proposed Staples Store for the Bethlehem Store, the New York store is considered an anchor.

In reviewing the record, the Court credits and accepts Staples proffer. Clearly, Staples, who is in the business of operating Staples Stores, has a stronger basis from which to testify about the traffic that a Staples Store generates than Mr. O'Shea, whose experiences with Staples have been limited to the leasing of one Staples Store and to his experience as a customer of Staples Stores. The Court also notes that Net offered no evidence to support Mr. O'Shea's view that a Staples Store would not generate enough customer traffic. In contrast, Staples has proffered estimates of its most recent sales figures, which impressively indicate that Staples generates a strong and profitable business.

In addition, the Court finds that in the context of the assignment between the Debtor and Staples, any prohibitions on subdividing in the Bethlehem Lease would constitute de facto anti-assignment provisions. Staples has based its bid for the Debtor's leases, including the Bethlehem Lease, on its ability to subdivide and sublet those portions of the stores not utilized by Staples to operate Staples Stores. In addition, Staples has proffered that in its experience in the office supply industry, a

4. For further discussion on the issue of the permanent excise of lease provisions see infra Part VI of this Opinion.

24,000 square foot store is the most suitable size store in which to conduct its business. Therefore, to prohibit Staples from subdividing the store in this context would in effect preclude the Debtor from being able to assign the instant lease to Staples.

To the extent that Net relies on *In re Joshua Slocum, Ltd.,* 922 F.2d 1081 (3d Cir.1990) for the proposition that the Court cannot overlook the alterations provisions in the Bethlehem Lease, the Court finds *Joshua Slocum* to be distinguishable from the instant case. While recognizing that literal compliance with all lease provisions is not required in the context of Section 365 assignments, the Court of Appeals for the Third Circuit held that the bankruptcy court could not excise a provision in the debtor's lease authorizing either party to terminate the lease if the debtor's gross sales for the first six lease years did not average $711,245 per year. *Id.* at 1090–1092. As the court recognized in its discussion, this clause was closely tied into the percent rent clause of the lease, and was necessary to enable the Landlord to accurately calculate the minimum total rent that he could be expected to receive.

In the Court's view, however, rent clauses, such as the one at issue in *Joshua Slocum,* are clearly more material and substantial to a lease than the alterations clauses at issue in this case, which the Court has already described as akin to "nuisance provisions." As such, the Court does not read *Joshua Slocum* to preclude the Court from overlooking the alterations clauses in the Bethlehem Lease for the purposes of allowing the assignment between the Debtor and Staples. Accordingly, the Court will overrule Net's objection to Staples' proposed subdivision.

## III. Tenant Mix

Based on the record adduced at the hearing, as well as the papers submitted, it appears to the Court that Vornado and LRSC's tenant mix concerns are related to their concerns over the use restrictions in their respective leases. In contrast, Net raises the tenant mix issue in connection with its concerns that the Bethlehem property may be "dark" for some time. Therefore, the Court will address Net's tenant mix objection separately from the tenant mix objections of Vornado and LRSC.

### A.  *Vornado and LRSC*

Both Vornado and LRSC argue that the use restrictions help preserve the tenant mix in the Hackensack Shopping Center. However, as the Court overruled the objection based on the use restrictions, the Court must likewise overrule the tenant mix objection, to the extent that it overlaps with the use restriction objection.[5]

### B.  *Net*

■  Net contends that the tenant mix in its shopping center will be disrupted by the Debtor's assignment of the Bethlehem Lease to Staples, because the Debtor and Staples have not provided any evidence concerning how long the Bethlehem Store will be dark. After reviewing the submissions and the record on this issue, the Court will overrule Net's objection.

First, the Court notes that the Bethlehem Lease does not contain any provisions prohibiting "going dark." To this extent, Net cannot argue that the assignment from the Debtor to Staples will interfere with any provision of the Bethlehem Lease.

---

5. For clarification regarding Vornado's position, the Court notes that Vornado does not contend that the operation of a Staples Store in the Hackensack Shopping Center will upset the tenant mix. Furthermore, it appears to the Court that Vornado did not raise tenant mix with regard to the portion of the property to be sublet. In any event, however, based on the representations of Staples, it appears to the Court that this is not an issue. Staples has represented to the Court that it intends to seek tenants that will complement the existing tenant mix, and that it seeks the landlord's acceptance of any proposed sublet tenant.

Second, at the present time, the Bethlehem Store is vacant because of the Debtor's liquidation. At the hearing, Staples proffered that it would take approximately six months for a Staples Store to become operational in a given site. Given the present condition of the Bethlehem Store, the Court does not find this period of time to be unreasonable, such that it would adversely affect the present tenant mix of the Bethlehem Shopping Center. In addition, with respect to the portion of the store not used by Staples, Staples proffered that it is in their best interest, as well as the shopping center's interest, to sublet the premises as quickly as possible. Based on Staples' proffers, which the Court credits, the Court has no reason to believe that Staples would allow the portion of the Bethlehem Store not used by Staples to remain dark for an unreasonable period of time.[6]

## IV. Percentage Rent

Net objects to the Debtor's assignment of the Bethlehem Lease to Staples on the grounds that the assignment will cause a substantial decline in percentage rent. Net contends that, because a Staples Store will not generate a strong customer base, the sales in the shopping center will drop, and therefore, the percentage rents owed to Net under the lease and by other tenants in the shopping center will decrease.

■ Section 365(b)(3)(B) provides that "adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—(B) that any percentage rent *due under such lease* will not decline substantially." 11 U.S.C. § 365(b)(3)(B) (emphasis added). It is clear based upon the language of this Section, that the percentage rent referred to is rent due under the lease to be assigned. Therefore, to the extent that Net premises its argument upon the percentage rents owed by other tenants in the

shopping center, the Court must overrule Net's objection.

■ To the extent that Net is concerned about the percentage rent due under the Bethlehem Lease, Staples proffered that the Debtor has not been paying any percentage rent, because the Debtor has liquidated. The Court finds Staples proffer credible and notes that Net has not offered any evidence to rebut the proffer. As there has been no percentage rent paid under the lease, there can be no decline in percentage rent as a result of the assignment of the Bethlehem Lease to Staples. Accordingly, the Court will overrule Net's percentage rent objection.

## V. Financial Condition of Staples

■ LRSC objects to the assignment of the Lawrence Lease from the Debtor to Staples on the ground that neither the Debtor nor Staples have provided sufficient information regarding the financial condition of Staples. The basis for LRSC's objection is its concern that Staples will not be able to meet its financial obligations due under the Lawrence Lease.

At the hearing, Staples proffered evidence that it operates 752 stores across the United States and approximately 30,000 stores world-wide. Staples further proffered that its most recently available sales figures indicate that Staples sales reached over $5 billion and that Staples net gross was over $170 million after taxes.

Under the Lawrence Lease, rent payments are approximately $2.22 per square foot, an amount well below the market value for the area, which is at least $10 per square foot. Given the proffer regarding Staples' financial condition, which the Court accepts and finds credible, and the low rent payments due under the Lawrence Lease, the Court finds that Staples has sufficient financial ability to satisfy its obligations under the Lawrence Lease.

---

**6.** Of course, if Staples efforts to sublet the property become unreasonable, the Landlord

can seek the appropriate redress at that time.

## VI. Modifications to the Lease

Both LRSC and Vornado object to the Debtor's Motion to the extent that it asks the Court to permanently strike certain provisions from their leases. LRSC and Vornado maintain that under Section 365(b)(3)(C), Staples is required to take the lease "subject to all provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity provision and will not breach any such provision contained in any other lease, financing agreement or master agreement relating to such shopping centers."

### A. *Use Restriction Clauses*

To the extent Vornado and LRSC raise this argument with respect to their use restriction provisions, the Court has already found these provisions to be so unreasonable as to constitute de facto anti-assignment provisions. Accordingly, the Court finds it appropriate to permanently strike these provisions from the Hackensack and Bethlehem Leases, and therefore, Vornado and LRSC's objection, in this regard, is overruled.

### B. *Assignment and Subletting Clauses*

In arguing that Staples is required to take the leases subject to all their provisions, Vornado and LRSC particularly emphasize the assignment and subletting clauses in their respective leases. Because of slight differences in their positions, the Court will address Vornado and LRSC's concerns regarding the assignment and subletting clauses separately.

#### 1. Vornado

■ The Court understands that Vornado does not object to overlooking the assignment and subletting provisions for the purposes of allowing Staples into the Hackensack Store. As such, the Court understands Vornado to object to the permanent excise of these provisions, such that they will be inapplicable to Staples efforts to sublet that portion of the Hackensack Store not used for a Staples Store.

The Debtor's Motion, however, does not seek to permanently excise reasonable provisions from the Hackensack Lease, but only unreasonable provisions that would have the effect of blocking or prohibiting a sublet by Staples. In reviewing the Hackensack Lease, the Court does not find any of its assignment and subletting provisions to be facially unreasonable, and therefore the Court will not permanently excise any of these provisions from the Hackensack Lease. As Vornado concedes, the provisions will be set aside to allow Staples to take the assignment of the property, however, those provisions will remain in effect so that Staples will be subjected to them for purposes of their subletting efforts.

#### 2. LRSC

■ Unlike Vornado, LRSC has not conceded that the Court may set aside assignment and subletting provision to allow the Debtor to assign the property to Staples. To the extent that LRSC objects to the setting aside of the assignment provision in the Lawrence Lease for purposes of allowing the assignment from the Debtor to Staples, the Court overrules LRSC's objection.

Article 15A of the Lawrence Lease provides that the "[t]enant shall have the right, without Landlords consent and without any requirements to notify Landlord as provided in B below to (A) assign its interest as tenant under this Lease or sublet any portion of the Demised Premises at any time or times to (i) a successor person, firm, or corporation resulting from consolidation, merger or from transfer of substantially all of Tenant's assets, (herein referred to as 'Successor') ..." In this case, the Debtor has proffered that the transaction with Staples has involved the transfer of 96% of the Debtor's assets. The Court has no reason to doubt the credibility of this proffer and finds 96% of the Debtor's assets to be substantially all of its assets. Accordingly, under the very provisions of the Lawrence Lease, the

Court concludes that the assignment from the Debtor to Staples is permissible.

To the extent that LRSC is concerned about the permanent excise of these provisions from the Lawrence Lease, the Court reiterates that the Debtor's Motion is not seeking to permanently excise reasonable provisions from the Lawrence Lease, but only unreasonable provisions that would have the effect of blocking or prohibiting a sublet by Staples. The Court has reviewed the Lawrence Lease and finds that the assignment and subletting provisions are not facially unreasonable. Therefore, once Staples assumes the Lawrence Lease, Staples will be required to abide by these provisions.

## C. *Other Lease Provisions*

To the extent that Vornado, Net and LRSC object to the permanent excise of any provisions of their respective leases, the Court will overrule the objection.

As stated above in discussing the assignment and sublet clauses, the Debtor's Motion only seeks to excise unreasonable provisions in the leases that will prohibit a sublet by Staples. The Court has reviewed the Hackensack Lease, the Bethlehem Lease and the Lawrence Lease. With the exception of the use restriction clauses contained in the Hackensack Lease and Lawrence Lease discussed above, the Court finds that all of the provisions in each of the three leases are facially reasonable. As such, once the leases have been assigned to Staples by the Debtor, Staples will be subjected to all the provisions of the leases for purposes of their subletting efforts.

While the Court will not strike any provisions in the leases at this time, the Court will retain jurisdiction over this matter under the terms of the Order presented with the Debtor's Motion. Therefore, should any landlord attempt to enforce a lease provision in an unreasonable manner, Staples is free to return to this Court for the appropriate relief. Likewise, if Staples attempts to unreasonably disregard

any reasonable provision in its efforts to sublet the property, such that the landlord believes Staples is violating § 365 of the Bankruptcy Code, the landlord may also return to this Court for the appropriate relief.

## CONCLUSION

For the reasons discussed, the Court will overrule the Objections filed by Vornado, Net and LRSC.