**RAMCO–GERSHENSON PROPERTIES, L.P.**
**Appellant,**

v.

**SERVICE MERCHANDISE COMPANY, INC.**
**Appellee.**

**Civ.No. 3:02–0889.**
**Bankruptcy No. 3:99–02649.**

United States District Court,
M.D. Tennessee,
Nashville Division.

March 13, 2003.

Frank M. Pees, Trustee, Worthington, OH, Chapter 13 Trustee.

Jeffrey W. Farkas, Columbus, OH, for Debtors.

Beverly Gail Reese, Wyatt, Tarrant & Combs, Nashville, TN, for Ramco–Gershenson Properties, L.P., appellant.

Paul G. Jennings, Bass, Berry & Sims, Nashville, TN, for Service Merchandise Company, Inc., appellee.

### MEMORANDUM ON BANKRUPTCY APPEAL

WISEMAN, Senior District Judge.

Before the Court is an appeal of the Middle District of Tennessee Bankruptcy Court's ruling concerning the proposed assignment of Service Merchandise Company, Inc.'s ("Service Merchandise" or "Debtors") unexpired lease for store 533, located in West Oaks I Shopping Center, Novi, Michigan ("Novi Lease"). In its September 6, 2002 order, the Bankruptcy Court overruled the objections of Ramco–Gershenson Properties, L.P. ("Ramco"), approved Service Merchandise's assignment of the lease to JLPK–Novi LLC ("JLPK"), and further approved the immediate sublease to Michaels Stores, Inc. ("Michaels"). For the following reasons, this Court AFFIRMS the decision of the Bankruptcy Court.

### I. Introduction

Service Merchandise filed Chapter 11 bankruptcy petitions with the United States Bankruptcy Court for the Middle District of Tennessee, Nashville Division, on March 27, 1999. Within this context of winding down business operations, Service Merchandise sold the designation rights to all of its properties to KLA/SM, LLC ("KLA") for 116.4 million dollars. After negotiating through an initial objection, Ramco approved the sale of the designation rights for store 533 in Novi, Michigan, to KLA.[1] Concurrently, the parties entered into a written stipulation preserving Ramco's right to object to any proposed use of the leased premises under the provisions of the lease until such time that the Debtor proposed assignment to an end-user of the premises. Simultaneously, the Debtors retained rights to object to the lease terms as anti-assignment provisions. With Ramco's consent, KLA subsequently subleased roughly half of the parcel to TJX, Companies, Inc. ("TJX").

On April 25, 2002, the Debtors issued a lease notice to Ramco for approval, at-

---

1. Service Merchandise signed the original Novi Lease with Ramco in 1980 for approxi- mately 60,000 square feet of retail space in West Oaks I Shopping Center.

tempting to assign the Novi Lease to JLPK, which proposed to sublease to Michaels. On April 26, 2002, Ramco issued a letter refusing consent and giving notice that it intended to exercise its purchase rights pursuant to the lease agreement, arguing that these rights had been ratified by Service Merchandise post bankruptcy and were thus not subject to 11 U.S.C. § 365(f)(1) (2002) Ramco contends it was reasonable in withholding consent because JLPK failed to provide the adequate assurances required by 11 U.S.C. § 365(b)(3), which gives shopping center lessors special statutory protections.

On May 10, 2002, Ramco filed its objection to the proposed assignment with the Bankruptcy Court and simultaneously sought enforcement of its purchase rights. In an order dated September 10, 2002, the United States Bankruptcy Court for the Middle District of Tennessee overruled Ramco's objections and approved the assignment of the Novi Lease to JLPK, finding that Ramco could not reasonably withhold consent to the JLPK assignment or the Michaels sublease and limiting the enforcement of the "going dark" provisions in the Novi Lease. On October 9, 2002, this Court granted Ramco's motion for an emergency stay pending appeal.

## II. Standard of Review

■ Under Bankruptcy Rule 8013, this Court will not set aside a bankruptcy court's findings of fact unless the Court finds them to be "clearly erroneous." A finding of fact is clearly erroneous when "although there is evidence to support the finding, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *In re Scott*, 1999 WL 644380 at *3 (6th Cir. Aug.13, 1999). The bankruptcy

judge's conclusions of law are reviewed de novo. *See Bank One, Lexington, N.A. v. Woolum*, 979 F.2d 71, 75 (6th Cir.1992); *see also In re Creekstone Apartments Associates, L.P.*, 1995 WL 588904 at *3 (M.D.Tenn.1995)(unpublished opinion).

## III. Decision of the Bankruptcy Court

The bankruptcy court decided the following issues:

A. Is the lease provision permitting Ramco to purchase the Debtor's leasehold interest upon denial of its reasonably withheld consent an anti-assignment provision that is unenforceable within the confines of bankruptcy?

Bankruptcy Court Ruling: The purchase option is a restriction on assignment in contravention of section § 365(f). Accordingly, Ramco has no option to purchase the lease because of the assignment to JLPK.

B. Has Debtor carried its burden to establish adequate assurance of future performance to assign the lease to JLPK as required by 11 U.S.C. § 365(b)(3)? [2]

Bankruptcy Court Ruling: The Debtor has met its burden and shown to this court adequate assurance of future performance with respect to (1) financial strength and operating performance of JLPK, (2) use and exclusivity issues, and (3) tenant mix issues.

C. Was consent reasonably withheld by the landlord for the sublease from JLPK to Michaels, thereby permitting Ramco to exercise its purchase option under the terms of the overlease?

---

**2.** 11 U.S.C. § 365 refers to the trustee, however *In re Jennings*, 204 B.R. 41, 43 (Bankr. W.D.Mo.1997), holds that absent any limita-

tions or conditions that the court imposes, a debtor has the rights and powers of a trustee.

Bankruptcy Court Ruling: The court finds that consent was unreasonably withheld by Ramco and furthermore that the sublease between JLPK and Michaels is approved.

D. Does the "going dark" provision in the Novi lease allow Ramco to exercise its purchase option?

Bankruptcy Court Ruling: The Court finds that the "going dark" provision is enforceable, provided however that the nine-month "going dark" period begins to run upon assignment to JLPK.

## IV. Analysis

### A. Debtor's Purchase Rights

█ This Court affirms the bankruptcy court's ruling that Ramco's purchase option is an explicit, intentional restriction on assignment in contravention of § 365(f). Accordingly, these provisions of the lease are unenforceable and Ramco has no option to purchase the lease because of the assignment to JLPK.

The Novi Lease contains the following provision:

*Section 31 Assignment and Subletting*

In the event Landlord withholds consent to any such assignment or sublet and the Tenant desires to proceed with any assignment or sublet, Tenant shall have the right to do so, if, within ninety (90) days after Tenant notified landlord it desires to proceed, Landlord does not notify Tenant that Landlord elects to purchase Tenant's leasehold interest. In the event that Landlord elects to purchase, such interest the purchase priced therefore and the manner of acquiring same shall be as provided in Section 10 hereof.

If enforced, these purchase rights would restrict assignment because the lease also prohibits assignment or sublet without the Landlord's prior written consent. This is the type of clause § 365(f)(1) was intended to address. This Court finds this clause impermissible because of its intent to prevent assignment. *See In re Sun TV*, 234 B.R. at 356 (distinguishing between clauses that have the "effect" of restricting enforcement (enforceable) and the "intent" (unenforceable)).

11 U.S.C. § 365(f)(1) reads as follows:

Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection...

Pursuant to § 365(f)(1), courts may temporarily render anti-assignment clauses unenforceable so that a debtor's assignment is not blocked. *See, e.g., In re Rickel Home Centers, Inc.* 240 B.R. 826, 836 (D.Del.1998). The bankruptcy court's application of § 365(f)(1) to Section 31 of the Novi lease was appropriate. This temporary measure should not be construed as "rewriting" the lease, or denying Ramco the benefit of its bargain. After assignment, JLPK takes the Novi Lease in its entirety, and any further assignment or sublease would be subject to the terms.

█ Because the lease is located within a shopping center, the court must also consider 11 U.S.C. § 365(b)(3) in conjunction with § 365(f)(1). *See In re Trak Auto Corporation*, 277 B.R. 655, 670 (Bankr.E.D.Va.2002)(detailing how § 365(f)(1) affords shopping center owners special statutory protections).[3] Generally,

**3.** *See also* H.R.Rep. No. 595, 95th Cong., 1st     Sess. 348–49 (1977), *reprinted in* 1978

courts are cautious in using § 365(b)(3) to modify leases agreed to by the parties, holding:

> [T]he modification of a contracting party's rights is not to be taken lightly. Rather, a bankruptcy court in authorizing assumptions and assignment of unexpired leases must be sensitive to the rights of the non-debtor contracting party... and the policy requiring that the non-debtor receives the full benefit of his or her bargain.

*In re Joshua Slocum,* 922 F.2d 1081, 1090 (3d Cir.1990). Nonetheless, even in a shopping center context, § 365(f)(1) clearly blocks anti-assignment clauses so that a debtor's assignment is not blocked. *In re Trak Auto Corp.* 277 B.R. at 672 (holding that terms that violate the bankruptcy laws cannot be enforced by the court); *see In re Rickel Home Centers, Inc.* 240 B.R. 826, 836 (D.Del.1998). As an express anti-assignment provision, the purchase rights are therefore temporarily blocked, even in the shopping center context, as distinguished from average sales clauses, radius provisions, and exclusive use provisions, which other courts have refused to block. *In re Joshua Slocum,* 922 F.2d at 1081

(average sales clause); *In re The J. Peterman Co.,* 232 B.R. 366, 369–370 (Bankr. E.D.Ky.1999) (radius provision); *In re Sun TV and Appliances, Inc.,* 234 B.R. 356, 370 (Bankr.D.Del.1999)(exclusive use provision).

Bankruptcy Code § 365(b)(3)(D)'s concern about shopping centers' abilities to protect tenant mix can be respected without allowing clauses such as this one to stand. Because Ramco still has a reasonable right to refuse to assign or sublet to tenants that destroy tenant mix within its shopping center, this Court can find the purchase rights clause unenforceable and not violate § 365(b)(3)(D).

■ The re-adoption of the original lease in the transaction involving TJX did not convert the original lease into a post-bankruptcy contract, such that purchase rights may not be excised under § 365(f)(1). The third amendment to the new lease was adopted by the parties effective February 27, 2001, when the debtors assumed the Novi Lease. Under 11 U.S.C. § 365(f)(2), assumption of a lease is a condition precedent to the leases assignment.[4] The third amendment provides in

U.S.Code Cong. & Ad. News 5963, 6305, which reads in relevant part:

> A shopping center is often a carefully planned enterprise, and though it consists of numerous individual tenants, the center is planned as a single unit, often subject to a master lease or financing agreement. Under these agreements, the tenant mix in a shopping center may be as important to the lessor as the actual promised rental payments, because certain mixes will attract higher patronage of the stores in the center, and thus a higher rental for the landlord from those stores that are subject to a percentage of gross receipts rental agreement. Thus, in order to assure a landlord of his bargained for exchange, the court would have to consider such factors as the nature of the business to be conducted by the trustee or his assignee, whether that business complies with the require-

ments of the master agreement, whether the kind of business proposed will generate gross sales in an amount such that the percentage rent specified in the lease is substantially the same as what would have been provided by the debtor, and whether the business proposed to be conducted would result in a breach of other clauses in master agreements relating, for example, to tenant mix and location.

4. 11 U.S.C. § 365(f)(2) reads in relevant part:

> The trustee may assign an executory contract or unexpired lease of the debtor only if-
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
> (B) adequate assurance of future performance by the assignee of such contract or

relevant part: "All other terms and provisions... shall remain in full force and effect, including without limitation, Landlord's purchase rights thereunder[.]" The third amendment also included standard language to ratify the terms of the Novi Lease. The amendment was adopted by parties to allow TJX to sublease part of the original Service Merchandise space after bankruptcy proceedings had begun, and as such, it does not waive debtor's rights under § 365(f)(1).

If the assumption of a lease were enough to waive § 365(f)(1), then all anti-assignment provisions would be enforceable, because § 365(f)(2) *requires* that debtors assume leases before they are assigned. *See In re Office Products of America,* 140 B.R. 407, 410 (Bankr. W.D.Tex.1992). In this case, the evidence shows that both parties intended to preserve the status quo-both rights and objections. Further evidence of this intent can be found in the Stipulation, entered into in March 2002, where Debtors and Ramco expressly preserved the parties' rights to challenge the anti-assignment clauses of the Novi Lease "until assignment to an end-user." In conclusion, the provisions are unenforceable as discussed above under § 365(f)(1). *See Terry Oilfield Supply Co., Inc. et. al. v. American Security Bank, N.A. et al.,* 195 B.R. 66, 72 (S.D.Tex. 1996) ("[A]lthough the bankruptcy courts have the power to impair the obligation of pre-petition contracts, it does not have the power to impair post-petition contract.") The intent of both parties at signing was to leave existing rights and agreements in place and to preserve objections, meanwhile allowing TJX to occupy the space and pay rent to KLA.

### B. Adequate Assurance

■ 11 U.S.C. § 365(b)(3) imposes a heightened standard for "adequate assur-

lease is provided, whether or not there has

ance of future performance" in shopping center leases. The proposed assignment and sublease must be evaluated to insure compliance with subsections A, C, and D. 11 U.S.C. § 365(b)(3) reads in relevant part:

(3) ... [A]dequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance-

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

...

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

### 1. § 365(b)(3)(A): Financial Strength and Operating Performance of JLPK

■ This Court affirms the bankruptcy court's ruling that Ramco had adequate assurance of JLPK's financial strength and operating performance and, therefore, could not refuse consent to the proposed assignment and sublease on that basis.

been a default in such contract or lease.

Adequate assurance is to be evaluated on a commercially reasonable standard based on information available at the time of the parties decision. *Vranas & Assocs. v. Family Pride Finer Foods, Inc.* 147 Ill. App.3d 995, 101 Ill.Dec. 151, 498 N.E.2d 333, 339 (1986). It has also been interpreted to mean adequate assurance for payment of future rent. *In re Casual Male Corp., et al.,* 120 B.R. 256, 264 (Bankr.D.Mass.1990).[5] Commercial reasonableness factors include the proposed subtenant's financial responsibility, the type of business to be conducted on the premises, and whether the proposed business competes with that of the lessor or the lessee. *Vranas,* 498 N.E.2d at 339.

On April 25, 2002, Service Merchandise delivered to Ramco a proposed assignment and sublease to JLPK/ Michaels. The next day, on April 26, 2002, Ramco rejected the proposed assignment. Both parties agree that additional assurances were made available during the hearing in August 2002, although they disagree as to whether these were adequate. The bankruptcy court found that the assurance was adequate with respect to the three required factors: (1) financial strength and operating performance of JLPK, (2) use and exclusivity issues, and (3) tenant mix issues. *In re Service Merchandise Company Inc., et. al.,* No. 399–02649, at 3 (Bankr.M.D.Tenn. Sept. 10, 2002). In order to assess what information was available to Ramco at the time of the proposed assignment, the Court looks to the specific facts surrounding the proposed assignment and sublease.

On April 25, 2002, Service Merchandise informed Ramco of its intent to assign and sublease. Exhibit G to the lease notice stated, "The income derived from that certain sublease dated June 2, 2000 between Service Merchandise Company, Inc. and The TJX Companies, Inc. satisfies the requirement of demonstrating adequate assurance of future performance." On the following day, April 26, 2002, Ramco sent a letter to the Service Merchandise Chief Administrative Officer which stated in relevant part: "In the exercise of the landlord's reasonable business judgment, the landlord cannot consent to this transaction. Therefore, the landlord is providing notice ... that the landlord intends to exercise its purchase rights as articulated therein." No further reasons for refusing consent are given. Ramco followed this letter with an objection to Debtors' Lease Notice Regarding Proposed Assignment of the Lease, filed with the bankruptcy court on May 10, 2002. In its argument, Ramco briefly noted that its consent was reasonably withheld both because JLPK has no operating history or financial record and because Service Merchandise failed to provide Ramco with the required documentation of the "adequate assurance of future performance." The majority of Ramco's argument, however, centered on the proposed end-user, Michaels.

During the hearing before the bankruptcy court on August 13–14, 2002, the following exhibits were presented in the arguments about adequate assurance: (1) a letter dated July 12, 2002, constituting a formal proposal of "adequate assurance of future performance" relating to the Debtors' leased premises and offering to pre-

**5.** *In re Casual Male Corp.,* et al., 120 B.R. at 264 n. 8, elaborates further:

The legislative history indicates that the purpose of this language was "to insure that the assignee itself will not soon go into bankruptcy and will provide operating and

advertising benefits to the other tenants similar to those provided by the original tenant when its lease was executed." 130 Cong. Rec. S889 *reprinted in* App. 3 *Collier on Bankruptcy* XX–71 (15th ed.1989).

pare a form of guarantee; (2) cash flow analysis for the Novi location; (3) a guaranty between Ramco and Kimco Realty Corporation and Schottenstein Stores Corporation; (4) an SEC Form 10–K on Kimco Realty Corporation; (5) an Annual Report on Schottenstein Co.; (6) an SEC Form 10–K on TJX Co., Inc.; (7) a 2001 Annual Report on Michaels; and (8) a 1980 Annual Report on Service Merchandise, Inc. There is nothing to indicate that any of these materials were made available to Ramco prior to the hearing. Nonetheless, there is nothing to indicate they were unavailable prior to the hearing if Ramco had requested them.

After thorough evaluation of this evidence, the bankruptcy court ruled that these assurances were adequate to show both that JLPK's financial strength was at least as strong as Service Merchandise's had been in 1980 and that a reasonable landlord would have been adequately assured of future operating performance. *In re Service Merchandise Company Inc., et. al.*, No. 399–02649, at 4–9 (Bankr.M.D. Tenn. Sept. 10, 2002). The court's reasoning surpasses the "clearly erroneous" standard, and, therefore, this Court defers to this finding of fact.

■ This Court further notes that Exhibit G to the Lease Notice showed a good faith attempt by Debtors to provide adequate assurance. At the time, the sublease to TJX was already generating enough rent to exceed the payments required by the Ramco lease. Therefore, Service Merchandise may have thought that notation of this fact met the substance of the § 365(b)(3)(A) requirement. Ramco could have delayed consent while requesting further information as to whether the financial condition and operating performance of the assignee were similar to the Debtors' at the time of lease signing. Ramco's summary refusal to request further infor-

mation within the thirty-day period of consideration restricts its ability to now claim inadequate information. Ramco is also held to a commercial reasonableness standard. A commercial reasonableness standard assumes business parties operating in good faith negotiations. Therefore, although the burden of proof on adequate assurance rests initially on the debtor, if the landlord is unsatisfied by an initial good faith offer of assurance, he must give adequate reasons and allow the Debtor to augment the information within the time allowed. Thus both parties are charged with sharing and discovering existing information. This will insure that reasonable consent is either granted or withheld on substantive grounds, and not on any formality or failure to communicate. In this case, if Ramco had explained its reservations as to the financial capacity of JLPK, Service Merchandise could have provided Ramco the information which later became available at the hearing. The thirty-day period for negotiating consent between the debtor and lessor was designed to encourage these negotiations to occur between good faith parties outside of court. Allowing the bankruptcy court to consider all information potentially available to both parties, gives parties an incentive to negotiate in good faith.

### 2. § 365(b)(3)(C): Use and Exclusivity

■ The original Novi Lease executed May 27, 1980, contained the following provision granting Service Merchandise broad use rights:

*Use of the Premises*

Tenant shall initially open the leased premises for the operation of a typical catalog store operated by Tenant under the name "Service Merchandise." Thereafter, Tenant may use the leased premises for any lawful retail purpose;

provided, however, that so long as the remainder of the Shopping Center is being used and operated as a first-class, retail/commercial development, such use must be consistent with the use of the remainder of the Shopping Center as a first class, retail/commercial development. This provision shall not be construed as imposing an obligation on Tenant to operate in any manner.

When read in conjunction with the provision requiring consent to sublease or assign, the broad use provision gives Service Merchandise free control of the space. This broad use restriction carves out this space from any later protected use provisions given by Ramco to other tenants, including Jo–Ann's Etc ("Jo Ann's").[6] Because the original Novi Lease allowed Service Merchandise to use the premise for "any lawful retail purpose," the proposed assignment to JLPK and Michaels is within the use provisions of its own lease. Because this lease was signed prior to other leases and thereby took control of the space away from the landlord, Ramco, it also conforms with the requirements of § 365(b)(3)(C) in not violating any other

lease related to the shopping center. Finally, as discussed below, because this Court affirms the decision that West Oaks I and West Oaks II are separate shopping centers, the Jo–Ann's lease would not be examined under § 365(b)(3)(C) because it prohibits breach of provisions "contained in any lease, financing agreement, or master agreement relating to such shopping center." (emphasis added). Because Jo–Ann's is located in a separate shopping center, any protected use provisions are not protected under § 365(b)(3)(C).

### 3. § 365(b)(3)(D): Tenant Mix

■ This Court affirms the bankruptcy court decisions that West Oaks I and West Oaks II are two separate shopping centers. It is reviewed as a mixed question of law fact, where the bankruptcy court has applied the facts it was provided to the relevant factors from cases. *See In re Batie*, 995 F.2d 85, 88–89 (6th Cir.1993)(holding that on mixed questions of law and fact, the reviewing court must review the law *de novo* and the facts under a clearly erroneous standard).

6. Jo–Ann's Lease Provision, Section 14, effective March 19, 1999 states:

(a) In the event that any portion of the Shopping Center other than the Premises, or any outparcel owned or where the particular use thereof is controlled by Landlord, or any additions to the Shopping Center owned or where the particular use thereof is controlled by Landlord, or any portion of the shopping center designated as "West Oaks I" on Exhibit "B–1" attached hereto is owner or operated by Landlord or Landlord affiliate, are used or occupied for the Protected use or if any sales area therein is designated for the Protected Use (either of the foregoing being referred to as a "Market Condition") then so long as Tenant is not in default of this Lease beyond any applicable cure period, then Tenant shall have the right and option, so long as Tenant is leasing at least forty thousand (40,000) square feet of space of

the Shopping Center and continues to use the premises primarily for the use set forth as a Protected Use, then after notifying Landlord of such violation and Landlord fails, within thirty (30) days of notice of such violation (provided, however, such thirty (30) day period may be extended should Landlord have commenced legal action against such party and continues to diligently pursue legal action against such party forcing them to permanently cease violating such Market Condition), to cure such violation of such Market Condition, then Tenant shall have the right and option to either (i) pay as substitute rent only an amount equal to Five Thousand and No/100 Dollars ($5,000.00) per months, in lieu of the Fixed Minimum Rent and Percentage Rent required to be paid hereunder (hereinafter referred to as "Substitute Rent"), or (ii) terminate this Lease by giving written notice to the Landlord...

▮▮▮▮▮ Although the bankruptcy court does not expressly cite to the specific cases discussing shopping center factors, it nonetheless takes the factors from them. Weighing in favor of the designation of separate shopping centers are the following factors cited by the bankruptcy court:

- West Oaks I and West Oaks II are separated by a major public road.
- West Oaks I and West Oaks II file separate annual reports, and separate financial statements.
- Common Area Maintenance Charges are separate for West Oaks I and West Oaks II.
- West Oaks I and West Oaks II do not share any common walls or roofs and there is no over or under pass across West Oaks Drive to ambulate conveniently between the two.
- "Shopping Center" in the Jo–Ann's lease is defined as "the West Oaks II located at 43570 West Oaks Drive, Novi, Michigan, 48377 consisting of all buildings including the Premises and Common Areas, and other improvements located upon the Shopping Center Site, but shall exclude any property on the Shopping Center Site not owned by the Landlord."
- The Jo–Ann's lease makes specific references to "West Oaks I" when that shopping center is to be included.
- The Third Amendment to the [Service Merchandise Lease], executed in December, 2000 refers to the "retail shopping center commonly known as 'West Oaks I.'"

*In re Service Merchandise Company Inc., et. al.,* No. 399–02649 at 15, n. 6 (Bankr. M.D.Tenn. Sept. 10, 2002). This list of factors weighing in favor of a finding of two separate shopping centers demonstrates that the bankruptcy court adequately considered the following nonexhaustive list of factors:

(a) Combination of leases;

(b) All leases held by a single landlord;

(c) All tenants engaged in the commercial retail distribution of goods;

(d) The presence of a common parking area;

(e) The purposeful development of the premises as a shopping center;

(f) The existence of a master lease;

(g) The existence of fixed hours during which all stores are open;

(h) The existence of joint advertising;

(i) [sic] Contractual interdependence of the tenants as evidenced by restrictive use provisions in their leases;

(j) The existence of percentage rent provisions in the leases;

(k) The right of the tenants to terminate their leases if the anchor tenant terminates its lease;

($l$) Joint participation by tenants in trash removal and other maintenance;

(m) The existence of a tenant mix; and

(n) The contiguity of the stores.

*See In re Sun TV and Appliances,* 234 B.R. 356 (Bankr.Del.1999); *In re Joshua Slocum Ltd.,* 922 F.2d 1081 (3rd Cir.1990).

This decision that West Oaks I and West Oaks II are separate shopping centers is dispositive because the bankruptcy code grants shopping center landlords certain rights under § 365(b)(3)(D), including the right to consider "that assumption or assignment of such lease will not disrupt any tenant mix or balance" when evaluating whether to give consent to an assignment or sublease. Because the Court affirms the bankruptcy court's ruling and finds that West Oaks I and West Oaks II are two separate shopping centers, Ramco cannot use § 365(b)(3)(D) to consider competition between Jo–Ann's and Michaels based on tenant mix concerns. Jo–Ann's location in West Oaks II and the proposed

sublease to Michaels in West Oaks I are in separate shopping centers.[7] Ramco can only evaluate tenant mix considerations within the complex designated one shopping center. There are no allegations of tenant mix problems with any tenants in West Oaks I where the Service Merchandise controlled space is located.

### C. Ramco's Refusal to Consent to the Assignment and Sublease

#### 1. Consent to the Assignment

■ This Court affirms the bankruptcy court's decision that Ramco unreasonably withheld its consent of the assignment to JLPK. Ramco's decision to withhold consent is judged by a commercial reasonableness standard, looking to factors including the proposed assignee's financial responsibility, the type of business to be conducted on the premises, and whether the proposed business competes with that of the lessor. *Vranas & Assoc. v. Family Pride Finer Foods, Inc.*, 147 Ill.App.3d 995, 101 Ill.Dec. 151, 498 N.E.2d 333, 339 (1986).[8] Ramco's mistaken assumption that West Oaks I and II were one shopping center was probably made in good faith, but is nonetheless irrelevant here. As discussed in the analysis thus far, given the terms of the Novi Lease, there is no valid, business justification that allows Ramco to refuse consent to the assignment. The separate rights Ramco granted to Jo–Ann's at a later time,

which applied to stores in both West Oaks I and II, cannot be protected by Ramco under the consent to assignment and sublease clause in the Service Merchandise Lease. Ramco may not withhold consent to assignment and sublease to Service Merchandise's proposed assignee in West Oaks I, based on tenant mix and exclusive use provisions relating to a tenant in West Oaks II.

#### 2. Consent to the Sublease

■ The bankruptcy court also found that Ramco cannot reasonably refuse to consent to the sublease to Michaels. For authority, it cites to its own reasoning in a previous unpublished opinion on this issue, where debtors argued that a failure to approve the sublease would elevate form over substance in the following way. If the debtors had proposed the sublease initially, the court would have authority to approve it, and then approve the later assumption and assignment of the sublease to an entity like JLPK. Therefore, the bankruptcy court held that an argument limiting its own ability to sanction the proposed sublease to Michaels, ignored the "practical realities of this particular transaction" and would require "a perfunctory exercise [that] would be a waste of precious estate assets and a waste of judicial resources." *In re Service Merchandise*

---

7. In an attempt to rule exhaustively on the facts, the bankruptcy court further held as a matter of fact that even if West Oaks I and West Oaks II were considered the same shopping center, the assignment would be valid under the tenant mix provisions. *In re Service Merchandise Company Inc., et. al.,* No. 399–02649 at 16, n. 6 (Bankr.M.D.Tenn. Sept. 10, 2002).

8. The lease provides that Michigan law applies; however, other jurisdictions provide more guidance. *See, e.g., B.M.B. Corp. v. McMahan's Valley Stores,* 869 F.2d 865, 869 (5th Cir.1989)("Commercial reasonableness

thus is determined by reference to the provisions negotiated in the original lease between the landlord and tenant, not by reference to what the landlord later finds most economically advantageous."); *F.H.R. Auto Sales v. Scutti* 144 A.D.2d 956, 534 N.Y.S.2d 266 (1988)(where a landlord affirmatively promises not to unreasonably withhold its consent, its refusal can only be based upon a consideration of objective factors, such as the financial responsibility of the subtenant, the subtenant's suitability for the particular building, the legality of the proposed use and the nature of the occupancy).

*Company Inc., et. al.,* No. 399–02649 at 20 n. 10 (Bankr.M.D.Tenn. Sept. 10, 2002).

Although § 365 does not specifically authorize subleases, it does look to end-users on issues of adequate assurance, use and exclusivity, and tenant mix. It would be inconsistent if courts were required to consider such issues with reference to assignments, but not able to sanction the end-user's actual use. Therefore, this Court affirms both the bankruptcy court's decision allowing the sublease, and the specific jurisdiction to make such a ruling. As a matter of first impression in this jurisdiction, this Court rules that a bankruptcy court may sanction both the assignment and the sublease pieces of the contemporaneous transaction presented here, when the proposed end-use has been analyzed under § 365 and when the proposed transaction would be possible were it structured with the sublease first and then the assumption and assignment.

### D. "Going Dark" Provision

■ The Novi Lease contained the following provision:

> In the event that Tenant fails to operate its building on the leased premises for a continuous period of nine (9) months after Tenant opens for business for reasons other than damage or destruction by reason of fire, casualty, or eminent domain, Landlord shall have the right at any time thereafter while said premises are vacant to notify Tenant that it elects to purchase Tenant's leasehold improvements.

Affirming the bankruptcy court, this Court holds that, like the purchase rights, this "going dark" clause has the intent to prevent assignment. Under 11 U.S.C. § 365(f), the provision is an unenforceable restriction upon assignment. Although temporarily blocked to permit assignment, it will, however, begin running with the new assignee, and the nine months starts with the effective date of the assignment. This preserves the benefit of Ramco's bargain, without penalizing either party for the time spent resolving the matter in court.

## V. Conclusion

Based upon the foregoing analysis, the judgment and order of the bankruptcy court concerning Service Merchandise's proposed assignment and sublease is AFFIRMED.

An appropriate order will enter.

## *ORDER*

This case concerns the proposed assignment of Service Merchandise Company, Inc.'s unexpired lease for store 533, located in West Oaks I Shopping Center, Novi, Michigan. Service Merchandise Company, Inc. seeks to assign the lease to JLPK–Novi LLC, who proposes a subsequent sublease to Michael Stores, Inc. The Bankruptcy Court's Order dated September 6, 2002, authorizes the assignment and subsequent sublease. Before the Court is an appeal of the Bankruptcy Court's ruling authorizing the assignment of the shopping center lease and the subsequent sublease.

For the reasons more fully contained in the accompanying memorandum, this Court AFFIRMS the decision of the Bankruptcy Court.

It is so ORDERED.